**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 19-cr-392 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| DERRICK CLAIBORNE. | ) | |

**MEMORANDUM OPINION AND ORDER**
**FOLLOWING BENCH TRIAL**

As explained in detail below, upon consideration of the controlling statute and case law and applying a common-sense view of the evidence introduced at the bench trial, the Court concludes that the Government proved beyond a reasonable doubt that Defendant Derrick Claiborne illegally possessed three easily accessible, loaded handguns in order to protect himself, the drugs, and the drug proceeds recovered from his apartment during the execution of valid search and arrest warrants. Accordingly, the Court will enter a finding of guilty on Count Three, which charged Claiborne with possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

**I.      Evidence Adduced at Trial**

In the early morning hours of November 28, 2018, ATF agents executed federal arrest and search warrants for Defendant Derrick Claiborne at his apartment, which was located at 1255 South Michigan Avenue in Chicago, Illinois. As agents entered the two-bedroom apartment, they observed Claiborne—wearing a white mask over his nose and mouth—exiting a small laundry room by the entryway. Around the laundry room area, ATF recovered slightly more than a kilogram of fentanyl-laced heroin, a much smaller supply of non-fentanyl-laced heroin, and drug packaging supplies. In the master-bedroom closet, ATF recovered three firearms—namely, an Israel Weapon Industries Desert Eagle, .50 caliber pistol, bearing serial number 43201711; a Glock

22, .40 caliber pistol, bearing serial number BRS733US, with a loaded drum magazine; and a Glock 22, .40 caliber pistol, bearing serial number WHT808, with a loaded magazine. Two of the firearms were recovered inside a bag that contained approximately $31,950 in cash.

On June 22, 2021, Claiborne was charged in a superseding indictment with possessing a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count One); being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count Two); and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Three). R. 60.1. On June 10, 2022, Claiborne pleaded guilty to Counts One and Two of the Superseding Indictment, pursuant to a written plea agreement. R. 122. On June 13, 2022, a bench trial was held on Count Three. R. 123.

At the start of the trial, Claiborne stipulated to the key facts establishing his residence at the South Michigan Avenue apartment, as well as the fact that a DEA chemist would have testified that the drugs were what the Government said they were—that is, heroin and fentanyl-laced heroin. Government witnesses testified in detail as to the persons, drugs, and guns that they found upon entering the premises to execute the warrants. The sole issue for trial, and thus for resolution by the Court in this opinion, is whether Claiborne possessed three firearms found in his residence "in furtherance of" the crime of possession with intent to distribute a controlled substance.

During the trial, the Court heard testimony from ATF Special Agents Hamilton Beal, Perla Lopez, Neddy Fierro, and Andrew Karceski. Special Agent Beal testified that he was the leader of the ATF tactical team that executed the warrant for Claiborne's arrest. When the tactical team entered the apartment at 5:00 a.m., Special Agent Beal observed Claiborne "standing in the front entryway in his underwear" with "a construction dust mask on." Other than Claiborne, the only

2

other person in the apartment when ATF executed the arrest warrant was Claiborne's eight-year-old son.

Special Agent Lopez discussed items that ATF recovered from Claiborne's apartment that day, including a disposable face mask; narcotics from the laundry room and hallway closet; a loaded Israel Weapon Industries Desert Eagle, .50 caliber pistol, bearing serial number 43201711, and a loaded Glock 22, .40 caliber pistol, bearing serial number BRS733US, from a red backpack located in the master-bedroom closet; approximately $87,571 in cash, including $31,950 that was inside the same red backpack containing the two firearms; a loaded Glock 22, .40 caliber pistol, bearing serial number WHT808, on top of a shelf in the master-bedroom closet; and additional rounds of ammunition. Each of these items was introduced at trial without objection. Special Agent Fierro recorded videos of Claiborne's apartment prior to and after the execution of the search warrant. The video was played at trial.

Special Agent Andrew Karceski offered proposed expert testimony on drug trafficking, firearms, and the use of firearms by drug traffickers to protect themselves, their drugs, and their drug proceeds. Karceski explained the quantities, prices, and transport of heroin to the Chicago market. He also discussed cutting and mixing heroin with cutting agents, including fentanyl. Karceski also offered opinions as to why heroin traffickers, conducting an illegal cash business, often carry firearms to protect themselves, their drugs, and their cash. He provided an opinion as to why such traffickers would prefer handguns to long guns, and why they might keep their gun loaded and at the ready, near themselves or their drugs or drug proceeds.

## II.      Legal Analysis

### A.      Admissibility of Expert Testimony

At trial, Claiborne objected to Special Agent Karceski's testimony, pursuant to Federal

Rules 702 and 704(b).  Challenges under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579,

592-93 (1993), are less common in bench trials.  The Seventh Circuit has explained the critical

distinction between a jury trial and a bench trial with respect to testimony proffered under Rule

702 as follows:

> Where the gatekeeper and the factfinder are one and the same—that is, the judge—
> the need to make such decisions prior to hearing the testimony is lessened.
> See *United States v. Brown,* 415 F.3d 1257, 1268-69 (11th Cir. 2005).  That is not
> to say that the scientific reliability requirement is lessened in such situations; the
> point is only that the court can hear the evidence and make its reliability
> determination during, rather than in advance of, trial. Thus, where the factfinder
> and the gatekeeper are the same, the court does not err in admitting the evidence
> subject to the ability later to exclude it or disregard it if it turns out not to meet the
> standard of reliability established by Rule 702.

*In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006); see also *Metavente Corp. v. Emigrant Sav. Bank*,

619 F.3d 748, 760 (7th Cir. 2010) (observing that "the court in a bench trial need not make

reliability determinations before evidence is presented" because "the usual concerns of the rule—

keeping unreliable expert testimony from the jury—are not present in such a setting"); *Brown*, 415

F.3d at 1269 ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping

the gate only for himself.").

Following this approach, the Court provisionally admitted Special Agent Karceski's

proferred testimony at trial, subjected it to cross-examination, and now confirms that his opinions

clear the three-part test for admissibility:  qualifications, reliability, and relevance.  As the Court

commented at trial, Special Agent Karceski's extensive background, training, and experience

demonstrated his qualifications to provide opinion testimony about the drug trafficking and the

tools used by drug traffickers for protection. Tr. 117–18 ("Based on what I've heard, it is very unlikely that he's not going to be qualified to testify on something as an expert based on 30 years in law enforcement and you've heard all of the rest of it."); see *United States v. Johnson*, 916 F.3d 579, 587 (7th Cir. 2019) ("[S]uch testimony is reliable when based both on significant law enforcement experience and an application of the case's facts."). The Seventh Circuit consistently has recognized the value of this kind of expert testimony for lay jurors. See *Johnson*, 916 F.3d at 587–88 ("Our court has long recognized that testimony regarding the methods used by drug dealers is helpful to the jury and therefore a proper subject of expert testimony. … This testimony was relevant to Johnson's case because it helped the jury better evaluate whether his firearm possession was consistent with and typical to the drug trade."); *United States v. Allen*, 269 F.3d 842, 846 (7th Cir. 2001) ("[W]e have allowed expert testimony 'concerning the 'tools of the trade' and the methods of operation of those who distribute various types of illegal narcotics' because the 'average juror is unlikely to be knowledgeable about drug trafficking.'") (quoting *United States v. Hubbard*, 61 F.3d 1261, 1274–75 (7th Cir. 1995)). Karceski reliably applied his experience to the evidence that he encountered at Defendant's apartment. The closer question in a bench trial—especially when the judge has fifteen years of experience on the bench—is whether such testimony truly is helpful to the trier of fact. Still, on balance, the Court found the testimony and the cross-examination useful and certainly not inadmissible.

Defendant's Rule 704(b) objection also is not persuasive. Rule 704(b) provides:

No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or a defense thereto. Such ultimate issues are matters for the trier of fact alone.

5

"This exception to 704(a) addresses a concern that testimony by a psychiatrist or other mental health expert could extend beyond medical conclusions into legal conclusions and unduly influence the jury." *United States v. Blount*, 502 F.3d 674, 679 (7th Cir. 2007). When applied to law enforcement experts testifying about the criminal nature of a defendant's actions, Rule 704 "takes on a more limited role." *Id.* "[W]hen a law enforcement official states an opinion about the criminal nature of a defendant's activities, such testimony should not be excluded under Rule 704(b) as long as it is made clear … that the opinion is based on the expert's knowledge of common criminal practices, and not on some special knowledge of the defendant's mental processes." *United States v. Lipscomb*, 14 F.3d 1236, 1242 (7th Cir. 1994). Here, Special Agent Karceski hewed to that line. He did not offer an opinion concerning Claiborne's mental state or condition based on some special knowledge of Claiborne; rather, he provided opinions about the drugs and firearms recovered in Claiborne's apartment based on his background, training, and experience.

**B.     Application of Evidence to Legal Standard**

Before the Court can find Claiborne guilty on Count Three of the Superseding Indictment, the Government must prove each of the following elements beyond a reasonable doubt: (1) Claiborne committed the crime of possessing a controlled substance with intent to distribute; (2) Claiborne knowingly possessed a firearm; and (3) Claiborne's possession of the firearm was in furtherance of a drug trafficking crime. See Seventh Circuit Pattern Jury Instructions (2020), 18 U.S.C. § 924(c)(1)(A), Possession of a Firearm in Furtherance of a Crime of Violence or Drug Trafficking Crime—Elements.

The first two elements have been established beyond a reasonable doubt by virtue of Claiborne's plea agreement and confirmed through the evidence adduced at trial as well. In his written plea agreement, Claiborne admitted that he committed the crime of possessing a controlled

6

substance with intent to distribute:  Specifically, on November 28, 2018, he was in his apartment, which was located at 1255 South Michigan Avenue, 40th Floor, Suite PH20, Chicago, Illinois. In that residence on that date, he possessed 400 grams or more of a mixture and substance containing a detectable amount of heroin and fentanyl, which he stored in the laundry room and hallway closet, portions of which were packaged for distribution. Near these narcotics, defendant stored three blenders, respirator masks, and a scale. Claiborne knowingly possessed the controlled substances described above and intended to distribute them to others.  He also acknowledged in his written plea agreement that he knowingly possessed three firearms, and these admissions too were confirmed by the trial evidence.  Specifically, Claiborne stored in a backpack which contained approximately $31,950 in U.S. Currency two guns:  a loaded Israel Weapon Industries Desert Eagle, .50 caliber pistol, bearing serial number 43201711, and a Glock 22, .40 caliber pistol, bearing serial number BRS733US with a partially loaded drum magazine. Elsewhere in the apartment, he had a loaded Glock 22, .40 caliber pistol, bearing serial number WHT808.

Under the controlling legal standard, Claiborne can be found guilty of possessing a firearm in furtherance of a drug-trafficking crime if any of the three firearms he possessed in the apartment furthered, advanced, moved forward, promoted, or facilitated his heroin trafficking.  *United States v. Duran*, 407 F.3d 828, 840 (7th Cir. 2005).  The mere presence of a firearm at the scene of a crime is insufficient to establish that the firearm was possessed "in furtherance of" the crime.  *Id.* "There must be 'a showing of some nexus between the firearm and the drug selling operation'''— for example, ''that a possessed gun [furthered] a drug trafficking offense by providing the dealer, his stash or his territory with protection.''  *United States v. Huddleston*, 593 F.3d 596, 602 (7th Cir. 2010) (citing *Duran*, 407 F.3d at 840).  In distinguishing between ''possession-for-protection'' and ''circumstantial or innocent weapon possession,'' courts are "guided primarily by

common sense." *Id*. "Factors that can be, but will not always be, useful in drawing this distinction include: 'the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.'" *Duran*, 407 F.3d at 480 (quoting *United States v. Ceballos–Torres*, 218 F.3d 409, 414–15 (5th Cir. 2000)). "No single factor determines the outcome; this inquiry is holistic." *United States v. Perryman*, 20 F.4th 1127, 1134 (7th Cir. 2021).

In the post-trial briefing, the Government—relying on Special Agent Karceski's testimony—and defense counsel engage in spirited debate over the inferences that the Court should draw from the essentially undisputed factual testimony and evidence at trial. Cases are legion in which the court of appeals has upheld the conclusion of a finder of fact—usually a jury—that the proximity of a loaded handgun to a significant quantity of drugs or drug proceeds meant that the gun in question had advanced a drug-trafficking crime. See, *e.g.*, *Duran*, 407 F.3d at 840 ("One legal theory that has been advanced, and unanimously accepted, is that a possessed gun can forward a drug-trafficking offense by providing the dealer, his stash or his territory with protection"); see also *Huddleston*, 593 F.3d at 602 ("the drug activity at issue— distribution— might reasonably call for the use of a weapon for protection, both during the drug deals and afterward to protect the remaining stash and profits"); *United States v. Mitten*, 592 F.3d 767, 777 (7th Cir. 2010) ("Based on our consideration of the Ceballos–Torres factors here, we conclude that the evidence was sufficient to support the verdict. … The gun was located on the top shelf of a closet about five feet down a hallway from more than $6,000 worth of drugs, additional cash, and scales."); *United States v. Castillo*, 406 F.3d 806, 814–15 (7th Cir. 2005) ("The presence of a

8

weapon serves as a potent warning to those who might contemplate stealing the drugs and a potent tool to defend against those who actually undertake to steal the contraband").

The sole question for resolution is whether the Court should draw the same inference here. The Court answers in the affirmative. The evidence established beyond a reasonable doubt that at the time of his arrest Claiborne possessed drugs with a street value of approximately $100,000 and almost as much—more than $87,000—in cash. He had not one, but three loaded, accessible firearms in the apartment, two of which were kept together in a bag and adjacent to a large stash of currency. Notwithstanding the presence of a minor child in the apartment, the guns were loaded and not safely stored. The suggestion that the currency might not have been drug proceeds is not persuasive. Recall that Claiborne plainly was working with the tools of the drug trade, protective mask and all, at 5:00 a.m., when the officers arrived on the scene. The reasonable inference from the totality of the evidence found on the scene is that the source of the cash was heroin dealing, including dealing fentanyl-laced heroin, and that the guns were on the scene in furtherance of that activity.

## III.    Conclusion

In sum, considering the controlling statute and case law and applying a common- sense view of the evidence, the Court concludes that the Government proved beyond a reasonable doubt that Defendant Derrick Claiborne illegally possessed three easily accessible, loaded handguns in order to protect himself, the drugs, and the drug proceeds. Therefore, Claiborne is guilty of possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

Dated:  February 28, 2023

_____
Robert M. Dow, Jr.
United States District Judge