UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) 19 CR 392 |
| v. | ) |
| | ) Judge Robert M. Dow Jr. |
| DERRICK CLAIBORNE | ) |
| | ) |

**GOVERNMENT'S POSITION PAPER
AS TO SENTENCING FACTORS**

**I. INTRODUCTION**

In early November 2018, defendant Derrick Claiborne purchased three firearms from James Saunders in the parking lot located behind Saunders's Chicago apartment. ATF recovered the three firearms from Claiborne's car shortly after the transaction.[1] A few weeks later, ATF agents executed federal arrest and search warrants at Claiborne's penthouse apartment on Michigan Avenue. As agents entered the apartment, they observed Claiborne—wearing a white mask over his nose and mouth—exiting a small laundry room by the entryway. Around the laundry room area, ATF recovered approximately 1.04 kilograms of fentanyl-laced heroin, approximately 61 grams of non-fentanyl-laced heroin, and drug packaging supplies. In the master-bedroom closet, ATF recovered three firearms, namely, a loaded Israel Weapon Industries Desert Eagle, .50 caliber pistol, bearing serial number 43201711;

---

[1] Claiborne pleaded guilty to illegal possessing these three firearms in *United States v. Derrick Claiborne*, 18 CR 797, which is pending before Judge Andrea R. Wood. Claiborne is currently scheduled to be sentenced in that case in August 2023.

1

a Glock 22, .40 caliber pistol, bearing serial number BRS733US, with a loaded drum magazine; and a Glock 22, .40 caliber pistol, bearing serial number WHT808, with a loaded magazine. Two of the firearms were recovered inside a bag that contained approximately $31,950 in cash.

On June 22, 2021, Claiborne was charged in a superseding indictment with possessing a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count One); being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count Two); and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Three). On June 10, 2022, Claiborne pleaded guilty to Counts One and Two of the superseding indictment, pursuant to a written plea agreement. Claiborne was convicted on Count Three following a June 2022 bench trial. For the reasons discussed below, the Court should sentence Claiborne to a total term of 195 months' imprisonment.

## II. BACKGROUND

Between May 2018 and November 2018, ATF conducted an investigation into the illegal trafficking of firearms from Missouri into Chicago by James Saunders, Jumonta Moore, and Marcus Ingram. ATF utilized confidential informants to purchase multiple firearms from Saunders, many of which were transported to Chicago from Missouri. As part of the investigation, ATF obtained court orders authorizing the installation and use of a pen register/trap and trace device for Saunders's phone and installed a pole camera behind Saunders's apartment, which

2

was located at 852 East 65th Street in Chicago. *See* 18 CR 797, Dkt. 248, Memorandum Opinion and Order, p. 2–4.

On the evening of November 1, 2018, ATF observed contact between Saunders's phone and a phone with a Missouri area code. The following morning, ATF observed contact between Saunders's phone and another phone with a Missouri area code. In light of the recent contact between Saunders and people using Missouri phone numbers, ATF suspected that firearms were potentially being transported from Missouri to Saunders's apartment. ATF viewed surveillance footage from the pole camera that had been installed behind the Saunders's apartment building and observed that at approximately 9:49 a.m. that morning, a purple Dodge Challenger, which was registered to Moore, arrived in the parking area located behind the apartment building. Two men got out of the Challenger and proceeded up the rear staircase of the apartment building; one of the men was carrying a large item in his right hand. While monitoring Saunders's phone, ATF observed that Saunders's phone was in contact with Claiborne's phone between approximately 10:50 a.m. and approximately 2:00 p.m. *See* 18 CR 797, Dkt. 248, Memorandum Opinion and Order, p. 4–5.

ATF subsequently recovered text messages from Claiborne's cell phone, pursuant to a search warrant. At approximately 10:53 a.m., Saunders texted Claiborne the following photograph of three firearms, along with a message that said "2000":



The photograph depicted a Smith & Wesson pistol (left), a Taurus pistol bearing serial number TKT05125 (middle), and a Canik TP9V2 pistol (right). About a minute later, Saunders added, "Or a zip of dog food."[2] Claiborne responded, "I want em." At approximately 12:04 p.m., Saunders texted Claiborne, "wassup g." Claiborne responded, "I'm coming I just have to go get the money my cousin not even asking the phone he have the work so I'm on my way home to get the money." Saunders replied, "Okay." At approximately 1:02 p.m., Saunders texted Claiborne, "How u looking g." Claiborne responded, "Be to you in bout 20 till 30 min." Saunders replied, "Okay." A copy of their correspondence is attached as Exhibit A.

Just before 2:00 p.m., ATF observed Saunders walk down the rear staircase of the apartment building and linger on the first-floor landing. At approximately 2:00 p.m., ATF observed Claiborne's silver Jeep Grand Cherokee pull into the parking area

---

[2] This appears to have been a reference to heroin. *See United States v. Thurman*, No. 14 CR 366, 2017 WL 621758, at *3 n.2 (N.D. Ill. Feb. 15, 2017) (government's expert witnesses testified that the term "dog food" is a coded term for heroin).

4

located behind the apartment building. As Claiborne's Jeep pulled into the parking area, Saunders walked down the stairs and approached the driver-side door of the car. Saunders was carrying a large white bag in his hand. Saunders walked around the front of Claiborne's Jeep, entered the front passenger seat of the car, and closed the door. Less than a minute later, Saunders got out of the car. Saunders no longer had the large white bag. Saunders walked back up the rear staircase of the apartment building. *See* 18 CR 797, Dkt. 248, Memorandum Opinion and Order, p. 5.

Claiborne's Jeep drove away from the scene. Shortly thereafter, ATF pulled Claiborne's Jeep over. Claiborne was the only person in the car. Three firearms (depicted below) were located behind the front-passenger seat, namely, a Smith & Wesson, M&P 40 Shield, .40 caliber pistol, bearing serial number HVH0905, a Taurus, PT111 G2, 9mm pistol, bearing serial number TKT05125, with an extended magazine, and a Canik, TP9V2, 9mm pistol, bearing serial number 16AI02701, with an extended magazine. *See* 18 CR 797, Dkt. 248, Memorandum Opinion and Order, p. 5–6. On November 27, 2018, Claiborne was charged by complaint in 18 CR 797 with being a felon in possession of the three firearms that were recovered from his car on November 2. 18 CR 797, Dkt. 1.



On November 28, 2018, ATF executed a federal arrest warrant for Claiborne at his penthouse apartment, located at 1255 South Michigan Avenue in Chicago. When ATF entered the apartment, agents observed Claiborne exiting a small laundry room by the entryway while wearing a white mask over his nose and mouth. The only other person in the apartment was Claiborne's son, who was a minor. ATF obtained and executed a warrant to search the apartment. In the laundry room, agents found approximately 1.04 kilograms of fentanyl-laced heroin, approximately 61 grams of non-fentanyl-laced heroin, and a scale. The narcotics were recovered in multiple locations in and around the laundry room. ATF also recovered additional narcotics from a jacket pocket in the hallway closet. *See* Dkt. 130, Memorandum Opinion and Order Following Bench Trial, p. 1–2.



Photographs of narcotics recovered from the laundry room

Inside the master bedroom closet, law enforcement recovered approximately $87,571 in cash, and three firearms, namely, a loaded Israel Weapon Industries Desert Eagle, .50 caliber pistol, bearing serial number 43201711; a Glock 22, .40 caliber pistol, bearing serial number BRS733US, with a loaded drum magazine; and a Glock 22, .40 caliber pistol, bearing serial number WHT808, with a loaded magazine. As reflected in the photographs below, two of the firearms were recovered inside a bag that contained approximately $31,950 in cash. *See* Dkt. 130, Memorandum Opinion and Order Following Bench Trial, p. 1–2.



Photographs of firearms recovered from the bedroom closet

### III. PROCEDURAL HISTORY

On May 7, 2019, Claiborne was charged in an indictment with possessing a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count One); being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count Two); and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Three). Dkt. 1. In light of the Supreme Court's decision in *Rehaif v. United States*, 139 S.Ct. 2191 (2019), on June 22, 2021, Claiborne was charged in a superseding indictment with possessing a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count One); being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count Two); and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Three). Dkt. 60. On June 10, 2022, Claiborne pleaded guilty to Counts One and Two of the superseding indictment, pursuant to a written

plea agreement. Dkt. 122. Claiborne was convicted on Count Three following a June 13, 2022 bench trial. Dkt. 123, 130. Concerning Count Three, this Court explained:

> The evidence established beyond a reasonable doubt that at the time of his arrest Claiborne possessed drugs with a street value of approximately $100,000 and almost as much—more than $87,000—in cash. He had not one, but three loaded, accessible firearms in the apartment, two of which were kept together in a bag and adjacent to a large stash of currency. Notwithstanding the presence of a minor child in the apartment, the guns were loaded and not safely stored. The suggestion that the currency might not have been drug proceeds is not persuasive. Recall that Claiborne plainly was working with the tools of the drug trade, protective mask and all, at 5:00 a.m., when the officers arrived on the scene. The reasonable inference from the totality of the evidence found on the scene is that the source of the cash was heroin dealing, including dealing fentanyl-laced heroin, and that the guns were on the scene in furtherance of that activity.

Dkt. 130, Memorandum Opinion and Order Following Bench Trial, p. 9.

## IV. GOVERNMENT'S POSITION ON SENTENCING

### A. Sentencing Guidelines

Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing. In order to determine the sentence to impose, the Court must consider the statutory factors listed in Section 3553(a)(1)-(7). One of those factors is the advisory range set by the Sentencing Guidelines. 18 U.S.C. § 3553(a)(4). Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide

9

consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

The Sentencing Guidelines are the sole factor in Section 3553(a) that provides any objective sentencing range that can practicably promote the overall goal of minimizing unwarranted sentencing disparities, which is itself a statutorily mandated factor. 18 U.S.C. § 3553(a)(6); *see United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country."). The Supreme Court created the advisory Guidelines system to "continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individual sentences where necessary." *Booker v. United States*, 543 U.S. 220, 264–65 (2005). The only way to prevent widespread unwarranted disparities is to give serious consideration to the Sentencing Guidelines.

The Sentencing Guidelines also generally deserve serious consideration because they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 552 U.S. at 46. The Commission is "a respected public body with access to the best knowledge and practices of penology." *United States v. Goldberg*, 491 F.3d 668, 673 (7th Cir. 2007). Furthermore, the Sentencing Commission is charged by statute to periodically review and revise the Guidelines as the Commission collects comments and data from numerous sources in the criminal justice system, 28 U.S.C. § 994(o),

and these ongoing efforts to refine the Guidelines are another reason to seriously consider the advisory range.

### B.     Presentence Investigation Report

The government disagrees with the Probation Office's calculation of the applicable Sentencing Guidelines range. Specifically, the government disagrees with the Probation Office's determination that Claiborne is entitled to two-level reduction for acceptance of responsibility on the grounds that he pleaded guilty to two of the three charged counts. PSR, ¶ 43. "Ordinarily a defendant who chooses to go to trial and force the government to prove his guilt is not eligible to receive a sentence reduction for acceptance of responsibility." *United States v. Williams*, 202 F.3d 959, 962 (7th Cir. 2000). Although the Sentencing Guidelines contemplate an exception for defendants who proceed to trial solely to challenge issues other than factual guilt, "[i]f a defendant challenges factual evidence of guilt as well as legal principles . . . he typically will be ineligible to receive the acceptance of responsibility reduction." *Id*.

Claiborne pleaded guilty to possessing with intent to distribute the heroin that was recovered from his apartment and to illegally possessing the three firearms that were recovered from his apartment. Dkt. 122. However, Claiborne proceeded to go to trial on the charge that he possessed the firearms in furtherance of his drug distribution operation. Dkt. 123. This constituted a challenge to the factual evidence of his guilt—the reason Claiborne possessed the firearms. Given that Claiborne did not truthfully admit to the entirety of his charged offense conduct, Claiborne is not

11

entitled to reduction for acceptance of responsibility. *See, e.g., United States v. McNeal*, 29 F. App'x 377, 380–81 (7th Cir. 2002) ("[T]his exception for 'rare situations' does not encompass those instances in which a defendant admits to some, but not all, of the essential factual elements comprising her offense."). Absent the reduction for acceptance of responsibility, Claiborne's total offense level is 31, which, when combined with the anticipated criminal history category of I, results in Sentencing Guidelines range of 108 to 135 months' imprisonment.

### C. Sentencing Recommendation

Considering the Section 3553(a) factors, including the nature and circumstances of the offense as well as Claiborne's personal history and characteristics, a sentence of imprisonment at the high end of the applicable Guidelines range on Counts One[3] and Two is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide a just punishment for the offense, afford adequate specific and general deterrence, and protect the public. The Court also must sentence Claiborne to five years' imprisonment on Count Three, which must be imposed consecutively to the sentence imposed on Counts One and Two.

Claiborne's extensive criminal record and offense conduct demonstrate a disrespect for the law and risk of recidivism that highlight the need for the sentence to deter him from continuing to commit crime in our community. Although this will

---

[3] Count One carried a mandatory minimum sentence of ten years' imprisonment. PSR, ¶ 149.

be the first time Claiborne serves a significant prison term, this is far from the first time that Claiborne has been involved in the criminal justice system. In January 1995, Claiborne was arrested for possession of a controlled substance; that November, Claiborne pleaded guilty and was sentenced to two years' probation. PSR, ¶ 52. Four months after his probation term ended, Claiborne was arrested for the illegal possession of a firearm as he fled from the scene of a reported shooting; in March 1999, Claiborne pleaded guilty and was sentenced to 90 days' home confinement. PSR, ¶ 54. In May 2004, Claiborne was arrested for the aggravated unlawful use of a weapon; police recovered a firearm from his car and another from his residence PSR, ¶ 56. A year later, Claiborne was convicted in that case and sentenced to 18 months' probation. PSR, ¶ 56. Six months after his probation term ended, Claiborne was arrested for criminal trespass to land, for which he later pleaded guilty. PSR, ¶ 61.[4]

Despite being a convicted felon with a history of arrests and convictions the illegal possession and use of firearms, on November 2, 2018, Claiborne nevertheless drove to the parking lot behind Saunders's apartment building and purchased three firearms, two of which had extended magazines. When ATF arrived at his apartment

---

[4] Between 1994 and 2016, Claiborne was arrested on multiple occasions, including for the possession, manufacture, and/or delivery of controlled substances (PSR, ¶¶ 70, 104, 115, 120), illegal possession of firearms (PSR, ¶¶ 71, 114), aggravated discharge of a firearm (PSR, ¶ 86), armed robbery with a firearm (PSR, ¶ 105), aggravated assault, battery, and domestic battery involving the use of a firearm (PSR, ¶¶ 90, 97, 101), attempted murder (PSR, ¶ 84), and murder (PSR, ¶ 99). Although Claiborne was not convicted of the charges underlying these arrests, the Court may consider Claiborne's substantial history of arrests for firearm and drug-related offenses at sentencing as a reliable indicator of a pattern of criminality that suggests a risk of recidivism. *See United States v. Mansfield*, 21 F.4th 946, 955–58 (7th Cir. 2021).

13

a few weeks later, agents discovered Claiborne in the midst of packaging for distribution over a kilogram of fentanyl-laced heroin, along with three readily accessible loaded firearms—one of which had a loaded drum magazine.

Heroin distribution and firearm offenses are serious crimes that adversely impact the people who live and work in the Northern District of Illinois. The type of drugs that Claiborne was packaging for distribution—a "particularly dangerous combination of heroin laced with fentanyl," *United States v. Major*, 33 F.4th 370, 385 (7th Cir. 2022)—have devastating effects on the community, resulting in untold human suffering by drug addicts and their families. On top of that, firearm offenses are the primary cause for the most serious forms of violent crime in our community. As such, the sentence imposed in this case must reflect the seriousness of Claiborne's crimes, promote respect for the law, and provide a just punishment for Claiborne's offense conduct. Importantly, the sentence imposed here must also deter Claiborne and others from committing similar criminal offenses in the future and, thereby, protect the public from serious harm.

### D.  Supervised Release Conditions

Given his criminal history and the nature of his offense conduct, Claiborne should be placed on a five-year term of supervised release following his release from custody. While he is on supervised release, mandatory conditions 1, 2, 5, and 6 should be applied. *See* PSR, p. 29. To facilitate supervision by the probation officer and, thereby, assisting in encouraging Claiborne's compliance with the law and deterring

him from committing future crimes, discretionary conditions 14, 15, 16, 17, and 18 should be applied. *See* PSR, p. 30–31. To ensure that Claiborne is behaving responsibly while on supervised release and, thereby, supporting his rehabilitation and reintegration into the community, discretionary conditions 1, 4, 6, 7, and 23, as well as special condition 3, should be applied. *See* PSR, p. 29–32. Lastly, to protect the public, including the probation officer, discretionary condition 8 and special condition 11 should be applied. *See* PSR, p. 29–33.

## V. CONCLUSION

For the foregoing reasons, the government requests that the Court sentence Claiborne to a total term of 195 months' imprisonment, to be followed by a five-year term of supervised release.

    Respectfully submitted,

    MORRIS PASQUAL
    Acting United States Attorney

By:   /s/ Jared C. Jodrey
    JARED JODREY
    Assistant U.S. Attorney
    NIRANJAN EMANI
    Special Assistant U.S. Attorney
    United States Attorney's Office
    219 South Dearborn Street, 5th Floor
    Chicago, Illinois 60604
    312-353-5300